

```
Priority  ✓
Send      ✓
Enter     ✓
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only
```

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY OF RIALTO, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>UNITED STATES DEPARTMENT OF DEFENSE, et al.,<br><br>　　　　Defendants.<br><br>AND RELATED CASES | NO. EDCV 04-00079-PSG (SSx)<br>[consolidated with Case No. EDCV 04-00759-SGL (SSx)]<br><br>**MEMORANDUM DECISION AND ORDER DENYING KWIKSET LOCKS, INC.'S AND EMHART INDUSTRIES, INC.'S OBJECTIONS TO AND MOTION TO VACATE THE DECEMBER 8, 2006 REPORT OF SPECIAL MASTER** |

## I. Introduction

On January 5, 2007, Kwikset Locks, Inc. ("Kwikset") and Emhart Industries, Inc. ("Emhart") filed a "Notice of Kwikset Locks, Inc.'s and Emhart Industries, Inc.'s Objections To And Motion to Vacate the December 8, 2006 Report of Special Master and Order Granting Plaintiff Goodrich Corporation's Motion to Compel Production of Documents On Privilege Log Entitled 'Emhart Industries, Inc.'s Privilege Log.'" (the "Motion" or "Motion to Vacate"). Kwikset and Emhart filed a Memorandum in support of the Motion and the Declaration of James L. Meeder. On January 16, 2007, the Goodrich Corporation ("Goodrich") filed an Opposition to the Motion (the "Opposition"). Goodrich also filed an "Appendix of Excerpts of Record Before Special Master."

Kwikset and Emhart seek review of Special Master Venetta A. Tassopulos's December 8, 2006 Order granting Goodrich's "Motion to Compel Production of Documents On Privilege Log, etc." (the "Motion to Compel"). For the reasons stated below, this Court DENIES the Motion to Vacate.

## II. Factual Background

The above-captioned cases involve allegations of water contamination in the Rialto-Colton groundwater basin. Plaintiffs have sued various defendants pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 et seq. For many years, various defendants have owned and/or operated businesses on property located in the City of Rialto. Plaintiffs have alleged that these defendants are responsible for the groundwater contamination. Goodrich, who is a defendant in the Rialto and the related actions, has cross-claims against Emhart, also a defendant in these actions. In addition, Goodrich has a separate action pending against Emhart.

Approximately fifty years ago, Kwikset dissolved as a corporation. (Exh. C, Statement of Dissolution).[1] Kwikset's assets were distributed

---

[1] Unless otherwise noted, references to "Exh." are those exhibits attached to the Declaration of Jeffrey Dintzer ("Dintzer Dec."), submitted with Goodrich's Appendix of Excerpts of Record Before Special Master, etc., filed on January 16, 2007. Some references are made to exhibits that were filed in connection with the Motion before the Special Master on November 7, 2006. The abbreviation "Jt. Stip." refers to the Joint Stipulation that was filed before the Special Master in

2

to the American Hardware Corporation ("AHC"). (Jt. Stip. at 1). The dissolution of Kwikset was complete on June 30, 1958. (Exh. C). AHC continued to operate an entity known as the "Kwikset Division." (Jt. Stip. at 2; Exh. L at 34-35). As part of Kwikset's dissolution, AHC obtained all of Kwikset's historical documents, including corporate and accounting documents. (Jt. Stip. at 4). AHC later became Emhart Industries, Inc. (Jt. Stip. at 1).

### III. Background Of Discovery Dispute

At some point in 2005, Goodrich served requests for production of documents on Kwikset and Emhart. (Jt. Stip. at 9). As part of their response, Kwikset and Emhart served a privilege log on Goodrich on January 19, 2006. (Jt. Stip. at 10). In the privilege log, some of Kwikset's historical documents were withheld pursuant to the attorney-client privilege.[2] Many of the documents appear to be correspondence between Kwikset's representatives and their attorneys pertaining to trademark and patent issues. Counsel for Emhart and Kwikset later clarified that Kwikset was asserting the privilege, not Emhart. (Jt. Stip. at 11).

In the Motion to Compel before the Special Master, Goodrich sought to compel the production of these documents on the grounds that a dissolved corporation is not entitled to assert the attorney-client

---

connection with this discovery dispute.

[2] The privilege log is included at Exhibit A to the original Dintzer Declaration, filed on November 7, 2006, in connection with the Motion to Compel before the Special Master.

3

privilege. Emhart and Kwikset disagreed, asserting that a dissolved corporation, once it is revived for the purpose of defending itself in court, must be permitted to fully defend itself, which includes asserting the attorney-client privilege. (Jt. Stip. at 3; Emhart Memo. at 3). Goodrich further argued that Emhart and Kwikset had waived the attorney-client privilege. (Jt. Stip. at 15-16). Emhart denied that the privilege was waived and also asserted that the documents in dispute were not relevant to any material issues in the case. (Jt. Stip. at 38).

The parties briefed the issues and argued before the Special Master during a lengthy hearing on December 4, 2006. The Special Master issued her "Report of Special Master and Order Granting Plaintiff Goodrich Corporation's Motion to Compel Production of Documents on Privilege Log Entitled 'Emhart Industries, Inc's Privilege Log'" (the "Report") on December 8, 2006. In the Report, the Special Master concluded that, under California law, Kwikset lost all corporate privileges when it dissolved in 1958.[3] (See Report at 4). The Special Master noted that Kwikset and/or Emhart failed to cite any authority to support its claim that a dissolved corporation retains the right to assert the attorney-

---

[3] Jurisdiction in this case appears to be invoked pursuant to 28 U.S.C. § 1331, federal question jurisdiction, although the parties did not address this issue in their briefs. When jurisdiction is based upon a federal question, then federal law controls the determination of privileges. Kerr v. U.S. Dist. Court for the N. Dist. of Calif., 511 F.2d 192, 197 (9th Cir. 1975). "State privilege doctrine, whether derived from statutes or court decisions, is not binding on federal courts . . ." Kelly v. City of San Jose, 114 F.R.D. 653, 655 (N.D. Cal. 1987). However, when state privilege law is not inconsistent with federal privilege law, federal courts may look to state law for guidance. See id. at 656. Here, the Court has not found any meaningful distinction between state and federal privilege law.

client privilege once it is dissolved. (Report at 5). Furthermore, the Special Master rejected Kwikset's argument that the attorney-client privilege survives dissolution because it is a "fundamental right." (Report at 6). Instead, she found that when AHC and Emhart acquired Kwikset's assets and documents, the privilege passed to them as the surviving corporations. (Id.).

The Special Master found that she was not required to reach Goodrich's arguments regarding Kwikset or Emhart's waiver of the privilege. (Report at 7). Finally, she rejected Emhart's argument that the requested documents were not relevant to the litigation. (Report at 6-8).

**IV. Standard Of Review Regarding Special Master's Report**

As set forth in this Court's prior order appointing the Special Master, all rulings by the Special Master (whether findings of fact or legal conclusions) shall be reviewed de novo by the Magistrate Judge. See Fed. R. Civ. P. 53(g)(3) (providing for de novo review for fact findings unless parties stipulate otherwise with court's consent).[4] Any objections to the Magistrate Judge's review of the Special Master's ruling shall be made pursuant to the normally applicable rules. See Fed. R. Civ. P. 72(a).

\\

---

[4] Although some parties were willing to consent to review of the Special Master's factual findings under the "clear error" standard, the Court found that it was required to apply the de novo standard to all findings, factual and legal, as there was not unanimous consent by all parties. See Fed. R. Civ. P. 53(g)(3) and (4).

5

## V. A Dissolved Corporation Is Not Entitled To Assert The Attorney-Client Privilege

As noted above, the parties disagree about a dissolved corporation's right to assert the attorney-client privilege when that corporation is required to defend itself in litigation. A review of the applicable code sections, California law interpreting those code sections and federal law governing the assertion of the attorney-client privilege leads this Court to conclude that a dissolved corporation is not entitled to assert the attorney-client privilege.

California Corporations Code section 2010 governs dissolved corporations and states, in pertinent part:

> A corporation which is dissolved nevertheless continues to exist for the purpose of winding up its affairs, prosecuting and defending actions by or against it and enabling it to collect and discharge obligations, dispose of and convey its property and collect and divide its assets, but not for the purpose of continuing business except so far as necessary for the winding up thereof.

In Penasquitos, Inc. v. Superior Court, 53 Cal. 3d 1180, 283 Cal. Rptr. 135 (1991), the California Supreme Court addressed the implications of Section 2010 for a dissolved corporation which was sued for conduct that occurred before the dissolution. The case arose from construction defect claims by homeowners against two corporations that graded their lots and built their homes. Id. at 1183. The corporations

had dissolved prior to the filing of the actions. During the litigation, these defendants asserted that, due to their dissolution, they could not be sued. Id.

The California Supreme Court rejected this argument, finding it inconsistent with the statute's intent. Id. at 1193-94. The court held that dissolved corporations may be sued and parties may maintain lawsuits against dissolved corporations "'at law or in equity, in contract or tort, or of what nature soever, and whether begun before or after dissolution.'" Id. at 1186-87 (citations omitted). Dissolved corporations may be sued for both pre- and postdissolution conduct. Id. at 1189-90. The Penasquitos decision noted that participating in a judicial resolution of claims against the corporation is part of the "winding up" process for which Section 2010 expressly requires the dissolved corporation's existence to continue. Id. at 1190. As most dissolved corporations lack the means to satisfy a monetary judgment, the court found that there is no need to erect legal barriers to protect dissolved corporations from litigation. Id. at 1191. However, the Penasquitos decision did not address which privileges, if any, a dissolved corporation could later assert in such litigation.

California Corporations Code section 1905(b) addresses the rights of corporations following dissolution. Section 1905(b) states: "[Upon dissolution] the corporate powers, rights, and privileges of the corporation shall cease." Thus, once a corporation is dissolved, California law provides that the corporation has no authority to "reinstate" its corporate status. See Catalina Invs., Inc. v. Jones, 98 Cal. App. 4th 1, 7, 119 Cal. Rptr. 2d 256 (2002). The Catalina

panel, citing both sections 1905 and 2010, clarified that a corporation ceases to exist upon dissolution except to engage in activities necessary for the "winding up" of the corporation which, as recognized in Penasquitos, includes defending lawsuits. Id. As such, the dissolved corporation in Catalina lacked the capacity to submit a certificate of revocation of dissolution because "revoking" its dissolution was considered more than just "winding up" the corporation's business. See id. at 7-8 (distinguishing Penasquitos).

Both Goodrich and Emhart discuss the Supreme Court's decision in Commodity Futures Trading Comm. v. Weintraub, 471 U.S. 343, 105 S. Ct. 1986, 85 L. Ed. 2d 372 (1985), but disagree on its implications for this case. (See Jt. Stip. at 13, 32; Motion to Vacate at 7-8; Opposition at 3-5). In Weintraub, the question before the Supreme Court was whether a bankruptcy trustee had the authority to waive the debtor's attorney-client privilege with respect to communications that took place before the filing of the bankruptcy. Weintraub, 471 U.S. at 345. The Court noted that, when control of a corporation passes to new management, the authority to assert and waive the attorney-client privilege passes as well. Id. at 349. Finding that the debtor's trustee plays a role most like that of corporate management, the Weintraub court concluded that the trustee holds the privilege, not the bankrupt corporation's former directors. Id. at 353-355.

Weintraub, like Catalina and Penasquitos, does not directly address the question presented by the current motion, i.e., whether a dissolved corporation has the right to assert the attorney-client privilege in subsequent litigation. Weintraub did find, however, that the analysis

and rationale for asserting the privilege as a corporation is entirely different from the analysis and rationale that applies to individuals:

> [A] corporation, as an inanimate entity, must act through agents . . . When the corporation is solvent, the agent that controls the corporate attorney-client privilege is the corporation's management. Under our holding today, this power passes to the trustee because the trustee's functions are more closely analogous to those of management outside of bankruptcy than are the functions of the debtor's directors. An individual, in contrast, can act for himself; there is no "management" that controls a solvent individual's attorney-client privilege.

Weintraub, 471 U.S. at 356 (citations omitted).

Weintraub's discussion regarding the distinctions between corporations and individuals is particularly meaningful here because many of Emhart's arguments for allowing a dissolved corporation to assert the privilege are more compelling when one considers an individual's interest in the privilege, rather than a corporation's. Moreover, it is this distinction that several authorities have relied upon in reaching the conclusion that a dissolved corporation must not be permitted to assert the attorney-client privilege after dissolution.

Although there are no California cases directly on point, the Court's review of Weintraub, Penasquitos and Catalina, as well as other authorities, leads it to the conclusion that the Special Master's

finding was correct, i.e., that Kwikset, a dissolved corporation, may not assert the attorney-client privilege in the current litigation. As one treatise observed:

> Once the corporate entity has ceased to exist, or no longer exists with any officers and directors who have the authority to assert or waive the privilege protection, some courts have concluded that the privilege dies with the entity, unlike the privilege held by an individual, and the lawyer can be compelled to disclose confidential communications previously protected by the entity's privilege . . . Since the logic for even extending the attorney-client privilege to corporate entities is suspect, because it gives the protection to a fictitious legal entity that cannot speak, and provides no direct protection to the individuals who have to speak for the entity, the termination of the entity's protection may be reasonable. Parallels that have been drawn with individual clients are not apt, and the benefits from a full disclosure of relevant facts should control the resolution of this question.

Paul Rice, <u>Attorney-Client Privilege In The United States</u>, § 2.5 (2d Ed. 2007).

Several courts have agreed with this reasoning and have reached the same conclusion. In <u>Gilliland v. Geramita</u>, 2006 WL 2642525 (W.D.Pa. 2006), plaintiffs brought a motion to compel after certain defendants objected on attorney-client privilege grounds to producing the requested

documents. Plaintiffs sought email correspondence between defendants (who were insolvent medical companies) and their attorneys. Although the companies had not formally dissolved, they were insolvent and had ceased operating. The court found that, as there were no current management personnel, no one had the authority to assert or waive the privilege:

> The better rule, in the Court's view, is that there should be a presumption that the attorney-client privilege is no longer viable after a corporate entity ceases to function, unless a party seeking to establish the privilege demonstrates authority and good cause . . . [citations omitted]. This rule is consistent with the principle that the attorney-client privilege should be given the narrowest interpretation consistent with its purpose. No real purpose would be served by continuing the privilege after operations cease, as the corporation would no longer have any goodwill or reputation to maintain.

Gilliland, 2006 WL 2642525 at *4. Thus, the insolvent companies were not permitted to assert the privilege and the documents were ordered produced. Id. at *5.

In Lewis v. United States, 2004 WL 3203121 (W.D. Tenn. 2004), the court reached a similar conclusion after reviewing an IRS subpoena served upon a law firm for documents relating to the firm's client, a bankrupt corporation with no assets, officers, directors or shareholders. Id. at *1. The recipients of the subpoena brought a

motion to quash, asserting the attorney-client privilege. The court denied the motion, finding, among other things, that a defunct corporation could not assert the privilege. Noting that the attorney-client privilege <u>does</u> typically extend beyond the death of a natural person, and citing <u>Weintraub</u>, the <u>Lewis</u> court drew a distinction between a natural person and a corporation (similar to the distinction discussed in <u>Penasquitos</u>) and found that a "dead" corporation should not have the same privileges as a "dead" person. <u>Id.</u> at *4. As such, the court held that a defunct corporation could not assert the attorney-client privilege.[5] <u>Id.</u> at *5.

This Court agrees with the reasoning of the <u>Gilliland</u> and <u>Lewis</u> decisions. A dissolved corporation does not have the same concerns as a deceased natural person and therefore has less need for the privilege after dissolution is complete. As there are usually no assets left and no directors, the protections of the attorney-client privilege are less meaningful to the typical dissolved corporation. Moreover, because the attorney-client privilege has the effect of withholding relevant information from the factfinder, it should be applied only when necessary to achieve its limited purpose of encouraging full and frank disclosure by the client to his or her attorney. <u>Fisher v. United States</u>, 425 U.S. 391, 403, 96 S. Ct. 1569, 48 L. Ed. 2d 39 (1976). The privilege is to be strictly construed. <u>United States v. Martin</u>, 278

---

[5] <u>Cf.</u> <u>Radiant Burners, Inc. v. Amer. Gas Ass'n</u>, 320 F.2d 314, 323 (7th Cir. 1962)(recognizing that corporations have the right to assert the attorney-client privilege like natural persons); <u>Randy Intern. Ltd. v. Auto. Compactor Corp.</u>, 97 Misc.2d 977, 980, 412 N.Y.S.2d 995 (N.Y.City Civ. Ct. 1979)(a defunct corporation may still assert the attorney-client privilege). The Court notes that these cases were decided prior to the Supreme Court's decision in <u>Weintraub</u>.

F.3d 988, 999 (9th Cir. 2002)("Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed.")(quoting Weil v. Inv./Indicators, Research & Mgmt., Inc., 647 F.2d 18, 24 (9th Cir. 1981)). Here, strictly construing the privilege, the Court finds that Kwikset, a dissolved corporation, has less need for the protections provided by the privilege than a natural person would. The Court and the litigants' need for the full disclosure of information outweighs Kwikset's need for protection of its pre-dissolution attorney-client communications. As such, this Court agrees with the Special Master and finds that Kwikset lost its right to assert the attorney-client privilege when its dissolution was complete in 1958.

**VI. The Right To Assert The Attorney-Client Privilege Passed To AHC And Then To Emhart After Kwikset's Dissolution**

As noted above, at the time of Kwikset's dissolution, AHC became the sole shareholder of Kwikset and acquired all of Kwikset's assets. Control over the documents at issue passed to AHC's management. (Exh. BB at 47). Normally, the transfer of control over the corporation would also result in a transfer of the attorney-client privilege. See O'Leary v. Purcell Co., Inc., 108 F.R.D. 641, 644 (M.D.N.C. 1985)(holding that a surviving corporation succeeds to all the rights, powers and privileges of the predecessor corporation). However, the mere transfer of assets from one entity to another does not necessarily transfer the attorney-client privilege. See Fed. Deposit Ins. Corp. v. McAtee, 124 F.R.D. 662, 664 (D. Kan. 1988)("[T]he transfer of assets from one entity to another does not generally transfer the attorney-client privilege."). Cf. Ramada Franchise Sys. v. Hotel of Gainesville Assocs., 988 F. Supp

1460, 1463 (N.D. Ga. 1997)(finding that the authority to assert or waive the former company's attorney-client privilege passed to the new company when it acquired all of the assets and control of the old company); In Re Financial Corp. of Amer., 119 B.R. 728, 736 (C.D. Cal. 1990)(holding that the authority to assert the corporation's attorney-client privilege passes with the transfer of substantially all of the corporation's assets and liablities).

The evidence before the Court suggests that when AHC acquired the assets of Kwikset, it acquired "substantially all" of the corporation's assets.[6] (See Appendix of Excerpts, Exh. L, pp. 44, ll. 10-14: "Everything that Kwikset had owned -- owed or what [sic], went to American Hardware . . . lock, stock and barrel."). At the time of the dissolution, AHC was the sole shareholder of Kwikset. (Nov. 7, 2006 Dintzer Dec., Exh. D). AHC apparently continued operations under the "Kwikset Division" title. (Jt. Stip. at 2). There is no evidence before the Court that additional assets remained or were sold or distributed to other entities. There is no evidence to demonstrate that AHC did not assume control over the management of Kwikset. Under the authorities cited above, therefore, AHC acquired the attorney-client

---

[6] The Court notes that the evidence before it is limited to the Appendix of Exhibits submitted by Goodrich, the transcript of the hearing before the Special Master, and the exhibits submitted in connection with the Motion to Compel filed before the Special Master. The conclusions reached by the Court regarding the transfer of assets, therefore, are based upon a record created solely for this discovery dispute. The Court's findings, as reflected in this Order, should be construed as only controlling the discovery dispute before the Court and no other issue in the case.

privilege from Kwikset and later, when AHC became Emhart, Emhart acquired the privilege.

## VII. Emhart Waived The Right To Assert The Attorney Client Privilege

Emhart's failure to timely assert the privilege waived its right to do so. See Richmark Corp. v. Timber Falling Consultants, 959 F.2d 1468, 1473 (9th Cir. 1992)("It is well established that a failure to object to discovery requests within the time required constitutes a waiver of any objection.")(citing Davis v. Fendler, 650 F.2d 1154, 1160 (9th Cir. 1981)(untimely service of responses to interrogatories waives objection)). As Emhart has never itself asserted the attorney-client privilege over the documents in question, but instead clearly stated that only Kwikset was asserting the privilege (Exh. DD), Emhart has waived its right to assert the privilege.

## VIII. The Requested Documents Are Within Rule 26's Broad Definition of Relevance

Under Federal Rule of Civil Procedure 26(b)(1), each party has the right to discover nonprivileged information "relevant to the claim or defense of any party." Rule 26(b)(1) also permits the court, for "good cause," to order discovery of information relevant to the subject matter involved in the action. Relevance is broadly construed and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party. Pitney Bowes, Inc. v. Kern Int'l, Inc., 239 F.R.D. 62, 65

(D. Conn. 2006). The responding party must produce not only information which is admissible as evidence, but also information which is reasonably calculated to lead to the discovery of admissible evidence. Id. (citations and quotations omitted).

Goodrich asserts that the documents at issue relate to trademarks and patents held by Kwikset prior to its dissolution and that such documents are relevant to the de facto merger and "successor liability" issues presented by this case. (Opposition at 6-7). This Court again agrees and finds that, under Rule 26(b)(1)'s broad definition of relevance, the requested documents are relevant.

## CONCLUSION

The Court has conducted a *de novo* review of the issues presented by Emhart and Kwikset's Motion to Vacate. The Court agrees with the factual and legal findings contained in the Special Master's Report and concludes that Kwikset, as a dissolved corporation, cannot assert the attorney-client privilege in this litigation. Moreover, Emhart waived the right to assert the privilege by failing to object within the time permitted by the Federal Rules. Finally, the Court concludes that the requested documents are relevant to the parties' claims and defenses. As such, the documents must be produced to Goodrich.

\\
\\
\\
\\

1  IT IS HEREBY ORDERED that the Motion to Vacate is DENIED. The
2  documents at issue must be produced to Goodrich within 14 days of the
3  date of this Order.

5  IT IS SO ORDERED.

7  DATED: May 25, 2007

   /s/ Suzanne H. Segal
   SUZANNE H. SEGAL
   UNITED STATES MAGISTRATE JUDGE